**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| 1661, INC. d/b/a GOAT,<br>a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>GOATLIFT, LLC, an Ohio limited liability<br>company; and DOES 1-10,<br><br>        Defendants. | Case No.<br><br>Judge: |

## COMPLAINT

1.     Plaintiff 1661, Inc. d/b/a GOAT ("GOAT") brings this Complaint against Defendants Goatlift, LLC and Does 1-10 (collectively, "Defendants") as follows:

### NATURE OF ACTION

2.     This is a Complaint for (i) federal trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (ii) false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (iii) a violation of the Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165 *et seq.*; and (iv) unfair competition and trademark infringement under Ohio common law.

3.     By using the confusingly similar GOATLIFT and GOATLIFT-ATHLETE trademarks ("GOATLIFT Marks") on identical and/or closely related goods and services, Defendants threaten to usurp GOAT's hard-earned goodwill.

4.     GOAT alleges with knowledge concerning its own acts, and on information and belief as to all other matters (unless otherwise specifically stated), as follows:

### THE PARTIES

5.     GOAT is a Delaware corporation with its principal place of business at 3433 W. Exposition Place, Los Angeles, California 90018.

6.     Defendant Goatlift, LLC ("Goatlift") is an Ohio limited liability company with its principal place of business at 7353 Richardson Road, Groveport, Ohio 43125. Goatlift conducts business and provides goods and services using the GOATLIFT Marks throughout the United States, including Ohio and in this District.

7.     Does 1-10 are persons or entities responsible in whole or in part for the wrongdoing alleged in this Complaint ("Doe Defendants"). Each of the Doe Defendants participated in, ratified, endorsed, and/or was otherwise involved in the acts complained of, and they have liability for such acts. GOAT will further amend this Complaint if and when the identities of such persons or entities and/or the scope of their actions become known.

8.     At all relevant times, Goatlift and Doe Defendants acted as the principal, agent, and/or representatives of each of the other Defendants. Any action by one of the Defendants was within the course and scope of the agency relationship between the Defendants and was with the permission, ratification, and/or authorization of each of the other Defendants.

9.     As fully detailed below, Defendants use the GOATLIFT Marks in a manner that violates GOAT's longstanding and strong rights in its GOAT® mark.

## JURISDICTION AND VENUE

10.     Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over GOAT's claims for relief for violation of the Lanham Act. Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over GOAT's state law claims because they are joined with substantial and related claims under the Lanham Act. This Court also has supplemental jurisdiction over GOAT's state law claims pursuant to 28 U.S.C. § 1367(a) because all of GOAT's claims arise out of a common nucleus of operative facts.

11.     This Court has personal jurisdiction over Defendants because Defendants reside in the State of Ohio and have (i) conducted substantial business in the State of Ohio and this District by advertising, targeting, offering, selling, and providing their goods/services to residents of this District; (ii) derived financial benefits from residents of the State of Ohio by doing so; (iii) purposefully availed themselves of the privilege of conducting business in the

State of Ohio; (iv) sought the protection and benefits of the laws of the State of Ohio; and (v) the causes of action arise from Defendants' activities in and actions targeted at the State of Ohio.

12.     Venue in this Court exists under (i) 28 U.S.C. §§ 1391(b)(1), (c)(1)-(2), as Defendants reside in the State of Ohio and at least one of the Defendants resides in this District; and (ii) 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to GOAT's claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### GOAT and Its Successful GOAT® Brand

13.     Under the GOAT® mark, GOAT operates a wildly popular e-commerce platform which is available on both a mobile app and website (*www.goat.com*).  The GOAT® app and website facilitate the buying and selling, as well as authentication, of sneakers, clothing, jewelry, purses, wallets, bags, and various fashion accessory items, among other things.

14.     GOAT's online platform is a runaway success.  The GOAT® app is downloaded hundreds of thousands of times every month, and GOAT's platform has tens of millions of users around the world.

15.     As a result of its well managed and trusted platform, GOAT has developed significant goodwill with its users.  Indeed, consumers have come to recognize GOAT as a trusted source for high quality clothing items and accessories.

16.     In addition to its online platform, GOAT (and its predecessors in interest) have, since the early 2000s, been engaged in designing, marketing, and selling GOAT® branded clothing and accessories.

17.     GOAT's fame and high quality goods and services have resulted in numerous co-branding business relationships with some of the top fashion brands in the world.  For example, Burberry partnered with GOAT to launch the brand's Arthur sneaker exclusively on GOAT's platform.  This was preceded by similar launches with globally recognized brands such as Versace, Chloe, and McQ.  GOAT also partnered with Bergdorf Goodman to display highly sought-after sneakers in Bergdorf Goodman's iconic store on Fifth Avenue in New York City.

18. Most recently, GOAT partnered with famed soccer club Paris Saint-Germain to launch the People of Paris campaign. The partnership is not only a visual branding experience but includes the launch of a curated collection of new and vintage apparel.

### GOAT's Intellectual Property Rights

19. GOAT owns, and has obtained United States federal registrations for, a number of trademarks consisting of the term "goat":

| Trademark | Class and Description of Goods and Services | Reg. No. Reg. Date |
|---|---|---|
| GOAT | Class 25: Clothing, namely, shirts, pants; knitwear, namely, knit shirts; ladies' clothing, namely, dress suits; coats, frocks, skirts, dresses, jackets, clothing jerseys, sweaters, trousers, clothing tops, and fashion clothing, namely evening gowns | 3506834 09/30/2008 |
| GOAT | Class 35: Catalog ordering service featuring clothing and clothing accessories; online retail store services featuring clothing and clothing accessories; information services relating to all of the above services | 4103419 02/28/2012 |
| GOAT | Class 9: Computer application software allowing users to find, research, analyze, compare, sell, and purchase goods and services via the Internet, global computer communication networks, and wireless telecommunications networks | 4908318 03/01/2016 |
| GOAT | Class 35: Providing an online marketplace for buyers and sellers of collectible consumer goods namely, athletic and sporting footwear; database management services; providing a website featuring evaluative feedback in the form of ratings, reviews, recommendations and other consumer information regarding the value and prices of sellers' goods, buyers' and sellers' performance, delivery, and transaction experience for commercial purposes; providing a searchable advertising guide featuring the goods and services of sellers; advertising and advertising services | 5357448 12/19/2017 |
| GOAT | Class 38: Telecommunication services, namely transmission of electronic messages, text messages, and push-notification alerts between consumer product buyers and sellers on the Internet, global computer communications networks, and wireless telecommunications networks | 5020477 08/16/2016 |

| Trademark | Class and Description of Goods and Services | Reg. No.<br>Reg. Date |
|---|---|---|
| GOAT | Class 42: Providing temporary use of online non-downloadable software for electronic business transactions in online marketplaces utilizing the Internet, global computer communication networks, and wireless telecommunications networks; authentication services in the field of collectible consumer goods, namely, the inspection and verification of authenticity of athletic and sporting footwear, apparel, and works of art | 5020478<br>08/16/2016 |

20. The foregoing marks are collectively referred to as the "GOAT Marks." The foregoing registrations are collectively referred to as the "GOAT Registrations."

21. A number of the GOAT Registrations, including the registration covering clothing (Reg. No. 3506834), are incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as GOAT's entitlement to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

22. Further, the GOAT Registrations constitute prima facie evidence that the GOAT Marks are valid, and that GOAT is entitled to the exclusive use of the GOAT Marks in commerce throughout the United States on the goods and services listed in the registrations.

23. GOAT, and its predecessors in interest, have been and are now engaged in the business of developing, creating, distributing, marketing, advertising, and selling a broad range of clothing items and accessories under the GOAT Marks. In fact, through its predecessors in interest, GOAT has been using the GOAT Marks for clothing and accessories for over 20 years.

24. Through careful cultivation of its goods and services provided under the GOAT Marks, GOAT has developed an outstanding reputation as a provider of high quality clothing items and accessories. GOAT has also become a household name in the fashion industry and has developed an extremely loyal customer following.

25. Through GOAT's widespread and continuous use of its family of GOAT Marks, these marks have acquired extensive goodwill, developed a high degree of distinctiveness, and

become well-known and recognized as identifying goods and services that originate from GOAT.

<strong><u>Defendants' Infringing GOATLIFT Marks</u></strong>

26.     On or around August 2019, Defendants launched a clothing and apparel company using the GOATLIFT Marks.

27.     Defendants registered the *www.goatlift.com* domain name, which Defendants have used to operate an online clothing store.

28.     On information and belief, through their online store, Defendants promoted and sold clothing under the GOATLIFT Marks throughout the United States.  Examples of the types of clothing that Defendants have sold to consumers are shown below:



29.     On information and belief, several consumers have purchased products bearing the GOATLIFT Marks, as shown below:



(*www.instagram.com/p/CFFWDeqFVGY*)

30. Defendants also advertise their online store, as well as their products bearing the GOATLIFT Marks, on various social media platforms, such as Facebook, Instagram, and Twitter ("Infringing Social Media Accounts"). Indeed, on each platform, Defendants prominently display the GOATLIFT Marks and direct consumers to the *goatlift.com* website, as shown below:



*(www.facebook.com/Goatlift)*



*(www.facebook.com/Goatlift)*



(*www.instagram.com/goatlift*)



(*www.twitter.com/goatlift*)

31. On the Infringing Social Media Accounts, Defendants regularly promote the specific clothing offered under the GOATLIFT Marks, as shown in the below examples:



(*www.instagram.com/p/CFkSX-dFkdW/*)

9



(*www.facebook.com/photo/?fbid=2822068074493263&set=a.150509161649181*)

32.    In light of GOAT's renown, online presence, and long history of providing goods and services under the GOAT Marks, GOAT is understandably concerned that consumers will likely be confused and mistakenly believe that Defendants and their goods and/or services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with, GOAT.

33.    On information and belief, Defendants intentionally adopted the GOATLIFT Marks to offer their clothing to capitalize on GOAT's success.

34.    By using the infringing GOATLIFT Marks, Defendants reap the benefits of GOAT's reputation and goodwill based on consumer confusion, all to GOAT's detriment.

35.    On November 21, 2019, Defendants filed a trademark application (Serial. No. 88/700640) with the U.S. Patent and Trademark Office ("USPTO") to register the mark

GOATLIFT in connection with "*athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms*" in Class 25.

36.     On December 2, 2019, Defendants filed additional applications with the USPTO to register the marks GOATLIFT (with a design) (Serial. No. 88/712447) and GOATLIFT-ATHLETE (with a design) (Serial. No. 88/712494), both in connection with "*athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms*" in Class 25. Defendants' trademark applications for the GOATLIFT Marks are collectively referred to as the "Infringing Applications."

37.     On September 2, 2020, GOAT, through its predecessor in interest, opposed the Infringing Applications in the USPTO's Trademark Trial and Appeal Board ("TTAB") (Opp. No. 91264548).  Defendants filed an answer to the opposition, and this action remains pending before the TTAB.

38.     GOAT, through its predecessor in interest, attempted to reconcile its concerns with Defendants, including by opposing the Infringing Applications.  However, Defendants have refused to meaningfully engage in negotiations, let alone cease use of their infringing marks.

39.     Given Defendants' failure to respond to GOAT's concerns, Defendants' continuing use of the GOATLIFT Marks, and Defendants' determination to cause consumer confusion, GOAT is forced to bring this suit to fully litigate and resolve the trademark issues between the parties.

**GOAT Is Harmed By Defendants' Continuing Infringement and Unlawful Conduct**

40.     Defendants' continued use of the confusingly similar GOATLIFT Marks in commerce violates GOAT's valuable intellectual property rights in the GOAT Marks and GOAT Registrations, and Defendants' knowing, intentional, willful, and malicious use of the GOATLIFT Marks is damaging to GOAT and GOAT's property.

41.     Defendants have used the GOATLIFT Marks to unfairly usurp and capitalize on the value and goodwill of the GOAT Marks and GOAT Registrations.  Defendants are aware of GOAT's strong trademark rights and reputation in the marketplace, but nevertheless, use the

GOATLIFT Marks to profit from the goodwill associated with the GOAT Marks and GOAT Registrations.

42.     Defendants have intentionally and knowingly capitalized off of confusion between the GOAT Marks and the GOATLIFT Marks, including by providing goods that are nearly identical to the goods offered by GOAT.

43.     Due to Defendants' continuing willful infringement and unlawful conduct, GOAT is now forced to bring this Complaint to protect its valuable and longstanding intellectual property rights.  GOAT had to retain counsel and incur substantial fees and costs (and it continues to incur those fees and costs) to prosecute this suit and pursue its claims.

44.     GOAT's interest in protecting its intellectual property rights and its products and services from consumer confusion outweigh any harm to Defendants.  The public interest is best served by granting GOAT's requested relief against Defendants.

### FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement – 15 U.S.C. § 1114

45.     GOAT incorporates by reference the factual allegations set forth above.

46.     GOAT owns the GOAT Marks and the GOAT Registrations.  The trademarks reflected in the GOAT Registrations are strong and distinctive and designate GOAT as the source of all products and services advertised, marketed, sold, or used in connection with the GOAT Marks.

47.     GOAT is the senior user of the GOAT Marks as it began use of those marks in interstate commerce prior to Defendants' first use of the confusingly similar GOATLIFT Marks.

48.     Defendants do not have authorization, a license, or permission from GOAT to market and sell their goods and services under the GOATLIFT Marks, which are confusingly similar to the GOAT Marks, and which are used by Defendants with goods and services that are identical and/or closely related to the particular goods and services associated with the GOAT Marks.

49. Defendants were aware of the GOAT Marks, as Defendants were on constructive notice based on GOAT's longstanding federal registrations, as well as on actual notice based on the numerous communications between GOAT's predecessor in interest and Defendants about this matter. Yet, Defendants continued to use their GOATLIFT Marks. Thus, Defendants' unauthorized use of the GOATLIFT Marks was and is knowing, intentional, and willful.

50. As a direct and proximate result of Defendants' wrongful conduct, GOAT has been and will continue to be damaged.

51. Defendants' actions therefore constitute trademark infringement.

52. Unless an injunction is issued enjoining any continuing or future use of the confusingly similar GOATLIFT Marks by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably harm GOAT.

53. Defendants' activities have caused and will continue to cause irreparable harm to GOAT, for which it has no adequate remedy at law, because: (i) the GOAT Marks comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with GOAT's goodwill and customer relationships and is harming and will continue to substantially harm GOAT's reputation as a source of high quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to GOAT, are continuing. Accordingly, GOAT is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

54. Pursuant to 15 U.S.C. §1117(a), GOAT is entitled to an order: (i) requiring Defendants to account to GOAT for any and all profits derived from their infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by GOAT that were caused by Defendants' conduct.

55. Defendants' conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), GOAT is therefore entitled to an award of treble damages against Defendants.

56.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus, GOAT is entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

## Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)

57.     GOAT incorporates by reference the factual allegations set forth above.

58.     The GOAT Marks are strong and distinctive and designate GOAT as the source of all goods and services advertised, marketed, sold, or used in connection with those marks. In addition, by virtue of the decades of use of the GOAT Marks by GOAT (and its predecessor) in connection with its products and services, and its extensive marketing, advertising, promotion, and sale of its products and services under the GOAT Marks, the GOAT Marks, have acquired secondary meaning, whereby the consuming public of this District, the State of Ohio, and the United States associate the GOAT Marks with a single source of products and services.

59.     GOAT is the senior user of the GOAT Marks as it began use of those marks in interstate commerce prior to Defendants' first use of the confusingly similar GOATLIFT Marks.

60.     Defendants were aware of the GOAT Marks because Defendants were on constructive notice based on GOAT's longstanding federal registrations, as well as on actual notice based on the numerous communications between GOAT's predecessor in interest and Defendants about this matter. Yet, Defendants continued to use their GOATLIFT Marks. Thus, Defendants' unauthorized use of the GOATLIFT Marks was and is knowing, intentional, and willful.

61.     Through their use of the confusingly similar GOATLIFT Marks, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that GOAT somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the confusingly similar GOATLIFT Marks.

62. In fact, there is no connection, association, or licensing relationship between GOAT and Defendants, nor has GOAT ever authorized, licensed, or given permission to Defendants to use the confusingly similar GOATLIFT Marks in any manner.

63. Defendants' use of the confusingly similar GOATLIFT Marks will likely cause confusion as to the origin and authenticity of Defendants' website, the Infringing Social Media Accounts, and the related goods and services promoted and sold through these channels. Moreover, Defendants' use of the GOATLIFT Marks will likely cause others to believe that there is a relationship between Defendants and GOAT when there is not.

64. As a direct and proximate result of Defendants' wrongful conduct, GOAT has been and will continue to be damaged.

65. Defendants' actions thus constitute false designation of origin and unfair competition.

66. Defendants' activities have caused, and will continue to cause, irreparable harm to GOAT, for which it has no adequate remedy at law, in that: (i) the GOAT Marks comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with GOAT's goodwill and customer relationships and will substantially harm GOAT's reputation as a source of high quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to GOAT, are continuing. Accordingly, GOAT is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

67. Pursuant to 15 U.S.C. §1117(a), GOAT is entitled to an order: (i) requiring Defendants to account to GOAT for any and all profits derived from its actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by GOAT that were caused by Defendants' conduct.

68. Defendants' conduct was and is intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), GOAT is therefore entitled to an award of treble damages against Defendants.

69.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus, GOAT is entitled to an award of attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

### Ohio Deceptive Trade Practices Act (Ohio Revised Code § 4165 *et seq.*)

70.     GOAT incorporates by reference the factual allegations set forth above.

71.     As described above, Defendants have violated the Ohio Deceptive Trade Practices Act.

72.     Defendants' use of the confusingly similar GOATLIFT Marks on unauthorized goods and services is likely to cause confusion as to the origin of Defendants' goods and services and is likely to cause others to believe that there is a relationship between Defendants and GOAT, when there is not.

73.     Defendants' wrongful acts have permitted and will permit them to receive substantial profits based on the strength of GOAT's reputation and the substantial goodwill it has built up in the GOAT Marks.

74.     As a direct and proximate result of Defendants' wrongful conduct, GOAT has been and will continue to be damaged.

75.     Unless an injunction is issued enjoining any continuing or future use of the GOATLIFT Marks by Defendants, such continuing or future use is likely to continue to cause confusion and thereby irreparably damage GOAT.  GOAT has no adequate remedy at law. Accordingly, GOAT is entitled to an injunction.

76.     At all relevant times, Defendants' wrongful conduct has been willful, and Defendants knew that their actions were deceptive.  Accordingly, GOAT is entitled to recover its reasonable attorneys' fees and costs pursuant to Ohio Rev. Code § 4165.03(B).

### FOURTH CLAIM FOR RELIEF

### Ohio Common Law Unfair Competition and Trademark Infringement

77.     GOAT incorporates by reference the factual allegations set forth above.

78.     GOAT has valid and protectable common law rights in the GOAT Marks.

79.     GOAT is the senior user of the GOAT Marks.

80.     GOAT has expended significant time and expense in developing the GOAT Marks and the high quality products and services it markets and sells under those marks. The GOAT Marks have been very successful and have developed a substantial reputation and goodwill in the marketplace.

81.     Defendants' use of the confusingly similar GOATLIFT Marks on unauthorized goods and services is likely to cause confusion as to the origin of Defendants' goods and services and is likely to cause others to believe that there is a relationship between Defendants and GOAT, when there is not.

82.     Defendants' wrongful acts have permitted and will permit them to receive substantial profits based on the strength of GOAT's reputation and the substantial goodwill it has built up in the GOAT Marks.

83.     Through their wrongful conduct, Defendants have misappropriated GOAT's efforts and are exploiting the GOAT Marks and GOAT's reputation to market and sell their services under the GOATLIFT Marks. These actions constitute unfair competition and trademark infringement.

84.     As a direct and proximate result of Defendants' wrongful conduct, GOAT has been and will continue to be damaged.

85.     Unless an injunction is issued enjoining any continuing or future use of the GOATLIFT Marks by Defendants, such continuing or future use is likely to continue to cause confusion and thereby irreparably damage GOAT. GOAT has no adequate remedy at law. Accordingly, GOAT is entitled to an injunction.

86.     Defendants have acted willfully, intentionally, and maliciously, such that GOAT is entitled to punitive damages.

## **PRAYER**

WHEREFORE, GOAT prays for the following relief:

A.     An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them (collectively, the "Enjoined Parties"), who receive actual notice of the injunction order by personal or other service, to:

     i.    cease all use and never use the GOATLIFT Marks, the GOAT Marks, or any other mark likely to cause confusion with the GOAT Marks (including any misspellings, abbreviations, or variations of those Marks) in, on, or with any products or services, or in connection with the advertising, marketing, or other promotion, distribution, offering for sale, or sale, of any products or services, including on any websites and the Infringing Social Media Accounts;

    ii.    never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, sold or otherwise distributed by the Enjoined Parties is in any manner associated or connected with GOAT, or are licensed, approved, or authorized in any way by GOAT;

    iii.    never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that the Enjoined Parties, or any of their products or services, are related to, or authorized or sponsored by, GOAT;

    iv.    never register any domain name that contains any of the GOAT Marks (including any misspellings, abbreviations, or variations of those Marks), or any domain name that is confusingly similar to any of the GOAT Marks;

    v.    transfer to GOAT all domain names in the Enjoined Parties' possession, custody, or control that include the word "goat" (including any misspellings, abbreviations, or variations of this word), or that are otherwise confusingly similar to or contain any of the GOAT Marks, or were used in connection with

the GOATLIFT Marks, including, but not limited to, the *goatlift.com* domain name;

vi.    transfer to GOAT, disable, or delete all social media accounts that were used to promote the GOATLIFT Marks, including all such accounts in Defendants' possession, custody, or control that include the word "goat" (including any misspellings, abbreviations, or variations of this word), or that are otherwise confusingly similar to or contain any of the GOAT Marks, or were used in connection with the GOATLIFT Marks, including, but not limited to, the Infringing Social Media Accounts;

vii.    never unfairly compete with GOAT in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of products and services bearing any of the GOAT Marks or any other mark likely to cause confusion with the GOAT Marks (including any misspellings, abbreviations, or variations of those Marks); and

viii.    never apply for or seek to register the GOATLIFT Marks, any of the GOAT Marks, or any other mark likely to cause confusion with the GOAT Marks (including any misspellings, abbreviations, or variations of those Marks).

B.    An order, pursuant to 15 U.S.C. § 1118, requiring the Enjoined Parties to deliver and destroy within thirty (30) days all prints, advertising, packaging, goods, and other materials bearing the GOATLIFT Marks.

C.    An order pursuant to 15 U.S.C. § 1116(a), directing the Enjoined Parties to file with the Court and serve on GOAT's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which the Enjoined Parties have complied with the injunction.

D.    To give practical effect to the Court's injunction, an order that the social networking service or entity (e.g., Facebook) related to any of the social media accounts subject

to this Order must, within fourteen (14) days of receipt of the Order, transfer, disable, or otherwise cancel those subject accounts at GOAT's request if the Enjoined Parties have not already done so.

E.      To give practical effect to the Court's injunction, an order that the Registry or Registrar for any of the domain names subject to this Order must, within fourteen (14) days of receipt of the Order, transfer or otherwise assign those subject domain names to GOAT if the Enjoined Parties have not already done so.

F.      An order finding that, by the acts complained of above, Defendants have infringed GOAT's federally registered trademarks in violation of 15 U.S.C. § 1114.

G.      An order finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

H.      An order finding that, by the acts complained of above, Defendants have violated the Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165 *et seq.*

I.      An order finding that, by the acts complained of above, Defendants have engaged in common law unfair competition and trademark infringement.

J.      An order awarding GOAT:

      i.      Pursuant to 15 U.S.C. § 1117(a), GOAT's actual damages, as well as all of Defendants' profits or gains of any kind from their acts of trademark infringement, false designation of origin, and unfair competition, including a trebling of those damages; and

      ii.      Punitive damages pursuant to Ohio common law.

K.      An order pursuant to 15 U.S.C. § 1117(a), finding that this is an exceptional case and awarding GOAT its reasonable attorneys' fees.

L.      An order pursuant to 15 U.S.C. § 1117(a), awarding GOAT all of its costs, disbursements, and other expenses incurred due to Defendants' unlawful conduct.

M.      An order pursuant to Ohio Rev. Code § 4165.03(B), finding that Defendants willfully engaged in a deceptive trade practice and awarding GOAT its attorneys' fees.

N.      An order awarding GOAT prejudgment interest.

O.      An order awarding GOAT such other relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, GOAT demands a trial by jury.

Dated:  January 9, 2024                                  Respectfully submitted,


/s/ Kevin T. Shook
Kevin T. Shook (0073718) (Trial Attorney)
Samantha M. Quimby (0081968)
FROST BROWN TODD LLP
One Columbus, Suite 2300
10 West Broad Street
Columbus, Ohio 43215-3484
Direct: (614) 559-7214
Ph:  (614) 464-1211
Fax:  (614) 464-1737
kshook@fbtlaw.com

*Attorneys for Plaintiff 1661, Inc. d/b/a GOAT*

0155258.0777692  4886-3789-7627v1