## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| 1661, INC. d/b/a GOAT, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> GOATLIFT, LLC, an Ohio limited liability company; and DOES 1-100, <br><br> Defendants. | Case No. 2:24-cv-00078-MHW-KAJ <br><br> Judge: Michael H. Watson |

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, PERMANENT INJUNCTION, AND ATTORNEYS' FEES AGAINST DEFENDANT GOATLIFT, LLC

Pursuant to Rules 55(a) and 54(d)(2) of the Federal Rules of Civil Procedure, Plaintiff 1661, Inc. d/b/a GOAT ("GOAT") moves for an order granting default judgment against Defendant Goatlift, LLC ("Defendant") as Defendant has failed to move or plead in response to Plaintiff's Complaint. This Motion for Default Judgment is supported by the attached Memorandum in Support, the Declaration of Jennifer L. Barry, the Complaint, and all other pleadings and papers on file with the Court in this action.

Dated: February 27, 2024

/s/ *Kevin T. Shook*
Kevin T. Shook (0073718) (Trial Attorney)
Samantha M. Quimby (0081968)
FROST BROWN TODD LLP
One Columbus, Suite 2300
10 West Broad Street
Columbus, Ohio 43215-3484
Direct: (614) 559-7214
Ph: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com
squimby@fbtlaw.com

Jennifer L. Barry (*admitted pro hac vice*)
Adam A. Herrera (*admitted pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Ph:  (858) 523-5400
Fax:  (858) 523-5450
jennifer.barry@lw.com
adam.herrera@lw.com


*Attorneys for Plaintiff*
1661, INC. d/b/a GOAT

<u>**MEMORANDUM IN SUPPORT**</u>

## I.      INTRODUCTION

By this motion and based on the allegations of its well-pled Complaint, GOAT respectfully requests judgment against Defendant Goatlift, LLC ("Defendant") that: (1) prohibits Defendant's continued use of the infringing GOATLIFT and GOATLIFT-ATHLETE marks (the "GOATLIFT Marks") or any confusingly similar marks; (2) transfers Defendant's social media accounts from Defendant to GOAT, including Defendant's Facebook page (*www.facebook.com/Goatlift*), X page (f/k/a Twitter) (*www.twitter.com/goatlift*), and Instagram page (*www.instagram.com/goatlift*) (collectively, the "Infringing Social Media Accounts"); (3) transfers the *goatlift.com* domain name from Defendant to GOAT; (4) orders Defendant to withdraw its trademark applications for the GOATLIFT Marks; and (5) awards GOAT its costs and reasonable attorneys' fees.

The Court has jurisdiction to enter default judgment, and GOAT is entitled to such relief because Defendant has admitted GOAT's well-pled allegations by failing to defend this lawsuit.

## II.      STATEMENT OF FACTS

For years, GOAT has used the GOAT® mark in connection with an e-commerce platform to facilitate the buying and selling, as well as authentication, of sneakers, clothing, jewelry, purses, wallets, bags, and other fashion accessory items.  Complaint, ECF No. 2 ("Compl.") ¶ 13. Further, since the early 2000s, GOAT (and its predecessor in interest) has designed, marketed, and sold GOAT® branded clothing and accessories.  *Id.* ¶ 16.  GOAT owns several United States federal registrations for the GOAT mark covering a broad range of goods and services including those summarized below (collectively, the "GOAT Marks").  *Id.* ¶ 19.

| Mark | Class and Description of Goods and Services | Reg. No.<br>Reg. Date |
|------|---------------------------------------------|----------------------|
| GOAT | Class 25: Clothing, namely, shirts, pants; knitwear, namely, knit shirts; ladies' clothing, namely, dress suits; coats, frocks, skirts, dresses, jackets, clothing jerseys, sweaters, trousers, clothing tops, and fashion clothing, namely evening gowns | 3506834<br>09/30/2008 |
| GOAT | Class 35: Catalog ordering service featuring clothing and clothing accessories; online retail store services featuring clothing and clothing accessories; information services relating to all of the above services | 4103419<br>02/28/2012 |
| GOAT | Class 9: Computer application software allowing users to find, research, analyze, compare, sell, and purchase goods and services via the Internet, global computer communication networks, and wireless telecommunications networks | 4908318<br>03/01/2016 |
| GOAT | Class 35: Providing an online marketplace for buyers and sellers of collectible consumer goods namely, athletic and sporting footwear; database management services; providing a website featuring evaluative feedback in the form of ratings, reviews, recommendations and other consumer information regarding the value and prices of sellers' goods, buyers' and sellers' performance, delivery, and transaction experience for commercial purposes; providing a searchable advertising guide featuring the goods and services of sellers; advertising and advertising services | 5357448<br>12/19/2017 |
| GOAT | Class 38: Telecommunication services, namely transmission of electronic messages, text messages, and push-notification alerts between consumer product buyers and sellers on the Internet, global computer communications networks, and wireless telecommunications networks | 5020477<br>08/16/2016 |
| GOAT | Class 42: Providing temporary use of online non-downloadable software for electronic business transactions in online marketplaces utilizing the Internet, global computer communication networks, and wireless telecommunications networks; authentication services in the field of collectible consumer goods, namely, the inspection and verification of authenticity of athletic and sporting footwear, apparel, and works of art | 5020478<br>08/16/2016 |

These trademark registrations constitute prima facie evidence that the GOAT Marks are valid and that GOAT is entitled to the exclusive use of the GOAT Marks throughout the United States for the goods and services listed in the registrations. *Id.* ¶ 22; *see also* 15 U.S.C. § 1057.

3

A number of GOAT's registrations, including Reg. No. 3506834, are incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as GOAT's entitlement to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in its registrations. Compl. ¶ 21. Through GOAT's widespread and continuous use of the GOAT Marks, the marks have acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying goods and services that originate from GOAT. *Id.* ¶ 25.

Under the confusingly similar GOATLIFT Marks, Defendant offers similar goods and services to the same class of consumers served by GOAT. *See id.* ¶¶ 26-31. Specifically, Defendant provides clothing and accessories under the GOATLIFT Marks. *Id.* ¶¶ 28-29. Defendant also operates an online clothing store (previously found on *www.goatlift.com*) and advertises its products under the GOATLIFT Marks on the Infringing Social Media Accounts. *Id.* ¶¶ 27, 30-31.

Due to the similarity of the GOATLIFT Marks and the GOAT Marks, as well as GOAT's renown, online presence, and long history of providing goods and services under the GOAT Marks, consumers will likely be confused and mistakenly believe that Defendant's goods and/or services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with, GOAT. *See id.* ¶ 32. Indeed, upon information and belief, Defendant intentionally adopted the GOATLIFT Marks to capitalize on GOAT's success, as GOAT (and its predecessor in interest) has long used the GOAT Marks in the clothing and online marketplace space. *Id.* ¶ 33. By using the infringing GOATLIFT Marks and capitalizing on the resulting consumer confusion, Defendant reaps the benefit of GOAT's reputation and goodwill. *Id.* ¶ 34.

On November 21, 2019, Defendant filed a trademark application (App. No. 88/700640) with the U.S. Patent and Trademark Office ("USPTO") to register the mark GOATLIFT in connection with "*athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms*" in Class 25. *Id.* ¶ 35. On December 2, 2019, Defendant filed additional applications with the USPTO to register the marks GOATLIFT (with a design) (App. No. 88/712447) and GOATLIFT-ATHLETE (with a design) (App. No. 88/712494), both in connection with "*athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms*" in Class 25. *Id.* ¶ 36. On September 2, 2020, GOAT, through its predecessor in interest, opposed all three of Defendant's applications in the USPTO's Trademark Trial and Appeal Board ("TTAB") (Opp. No. 91264548), and this opposition remains pending before the TTAB. *Id.* ¶ 37.

Despite the ongoing opposition and GOAT's attempts to reconcile its concerns with Defendant, Defendant has refused to meaningfully engage in negotiations or cease use of its infringing marks. *Id.* ¶ 38. Accordingly, GOAT filed the Complaint on January 9, 2024. *See id.* ¶ 2; Declaration of Jennifer L. Barry in Support of Plaintiff's Motion for Default Judgment ("Barry Decl.") ¶ 4. GOAT's Complaint states claims for (i) trademark infringement in violation of the Lanham Act (Count I); (ii) false designation of origin in violation of the Lanham Act (Count II); (iii) violations of the Ohio Deceptive trade Practices Act (Count III); and (iv) unfair competition and trademark infringement under Ohio common law (Count IV). *See* Compl. ¶¶ 45-86.

Defendant was duly served with the summons and Complaint and all other necessary pleadings, court orders, and scheduling materials on January 10, 2024. ECF No. 5; Barry Decl. ¶ 5. Defendant failed to file a responsive pleading by the January 31, 2024 deadline. *See* ECF

No. 6; Barry Decl. ¶ 6.  To date, Defendant has failed to file any responsive pleading or defend this lawsuit in any way.  Barry Decl. ¶ 6.  On February 5, 2024, the Clerk of the Court entered default against Defendant.  ECF No. 7; Barry Decl. ¶ 7.

## III.    ARGUMENT

The Court should enter default judgment barring Defendant from using the GOAT® mark, the GOATLIFT Marks, or any confusingly similar marks to prevent potential confusion among consumers, vindicate GOAT's trademark rights, and halt Defendant's ongoing infringement of these rights, which will otherwise continue unabated.  Federal Rule of Civil Procedure 55 establishes a two-step process for entering a default judgment consisting of: (1) entry of default and (2) entry of default judgment.  *See* Fed. R. Civ. P. 55(a)-(b); *Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986) ( "[E]ntry of default is just the first procedural step on the road to obtaining a default judgment").  Here, step one is complete, as the Clerk has entered Defendant's default.  ECF No. 7.  "Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the complaint, except those relating to damages."  *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 878 (S.D. Ohio 2007) (citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").  Because the well-pled factual allegations in the Complaint establish Defendant's liability, GOAT is entitled to the entry of default judgment.

### A.    Jurisdiction And Venue Are Proper

"Once default is entered, the defaulting party is deemed to have admitted all of the well-pled factual allegations in the complaint regarding liability, including jurisdictional averments."

*Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 670 (N.D. Ohio 2016) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006)). This Court has subject matter jurisdiction over GOAT's Lanham Act claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a). *See* Compl. ¶ 10. The Court has supplemental jurisdiction over GOAT's state law claims pursuant to 28 U.S.C. § 1338(b), as GOAT's state law claims are joined with and substantially related to GOAT's Lanham Act claims. *Id*. Additionally, the Court has supplemental jurisdiction over GOAT's state law claims pursuant to 28 U.S.C. § 1367(a) because all of GOAT's claims arise out of a common nucleus of operative facts. *Id*.

As to personal jurisdiction, GOAT has alleged, and Defendant has admitted, that Defendant is a resident of the State of Ohio with its principal place of business at 7353 Richardson Road, Groveport, Ohio 43125, which is within this District. *See id.* ¶ 6. Further, GOAT alleged that Defendant has (i) conducted substantial business in the State of Ohio and this District by advertising, targeting, offering, selling, and providing its goods and services under the GOATLIFT Marks to residents of this District; (ii) derived financial benefits from residents of the State of Ohio by doing so; (iii) purposely availed itself of the privilege of conducting business in the State of Ohio; (iv) sought the protection and benefits of the laws of the State of Ohio; and (v) the causes of action arise from Defendant's activities in and actions targeted at the State of Ohio. *Id.* ¶ 11. Venue is proper because Defendant resides in this District, and a substantial part of the events giving rise to GOAT's claims occurred in this District. *Id.* ¶ 12; *see also* 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1)-(2). Therefore, jurisdiction and venue are proper, and the Court may enter a default judgment against Defendant.

**B.** **GOAT Is Entitled To Default Judgment On All Of Its Claims**

GOAT's Complaint alleges that (i) GOAT owns the GOAT Marks, which are strong, distinctive, and valuable trademarks; (ii) Defendant is using the confusingly similar GOATLIFT Marks in commerce without GOAT's authorization; (iii) Defendant is using the confusingly similar GOATLIFT Marks in connection with the sale, offering for sale, distribution, and advertising of clothing goods; and (iv) such use is likely to cause consumer confusion. *See, e.g.*, Compl. ¶¶ 19-39. These allegations are sufficient to establish Defendant's liability on all of the claims asserted in GOAT's Complaint.

To establish a claim of trademark infringement under 15 U.S.C. § 1114 (Count I), GOAT must show that: "(1) it owns a valid trademark; (2) defendant used the trademark 'in commerce' without plaintiff's authorization; (3) defendant used plaintiff's trademarks, or an imitation thereof, 'in connection with the sale, offering for sale, distribution, or advertising' of goods and services; and (4) defendant's use of plaintiff's trademarks is likely to cause consumer confusion." *Zinganything,* 158 F. Supp. 3d at 673. Further, "[t]he 'touchstone of liability' for trademark infringement under 15 U.S.C. § 1114 'is whether defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *Id.* (quoting *The Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 910 (S.D. Ohio 2014)).

As for Count II, it is well-settled that "[t]he Sixth Circuit uses the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks." *Microsoft Corp.*, 490 F. Supp. 2d at 879 (citing *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006)); *Zinganything*, 158 F. Supp. 3d at 674 (same). Thus, the same analysis for Count I applies.

Similarly, for Counts III and IV, courts use the same analysis for trademark infringement claims brought under the Lanham Act. *Microsoft Corp.*, 490 F. Supp. 2d at 880 ("[T]he analysis of an unfair competition claim under Ohio law is the same as that for a claim under the Lanham Act") (citing *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003)); *see also Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704, 724 n.8 (S.D. Ohio 2002) ("The Court notes the same analysis applies to [federal] trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes."). GOAT's allegations in its Complaint are sufficient to establish liability for every claim in the Complaint.

### 1. **GOAT Owns Valid Trademarks.**

GOAT is the owner of multiple valid, registered trademarks consisting of the term 'goat,' and GOAT (through its predecessor in interest) has been using its marks to sell GOAT branded clothing and related accessories for over 20 years. *See* Compl. ¶¶ 19-23. Indeed, GOAT has developed significant goodwill with its consumer base, as its mobile app is downloaded hundreds of thousands of times *every month*, and its e-commerce platform has tens of millions of users around the world. *Id.* ¶¶ 13-15. Further, GOAT's fame and high-quality content and services have resulted in numerous co-branding business relationships with some of the top fashion brands in the world. *Id.* ¶ 17. For example, GOAT partnered with Burberry in connection with Burberry's launch of its "Arthur" sneaker exclusively on GOAT's platform. *Id.* GOAT has partnered with numerous globally recognized brands for similar product launches on GOAT's platform, such as Versace, Chloe, and McQ. *Id.* GOAT also recently partnered with famed soccer club Paris Saint-Germain to launch the "People of Paris" campaign, which not only includes a visual branding experience but also includes the launch of a curated collection of new and vintage apparel. *Id.* ¶ 18. GOAT's valid trademark registrations for the GOAT Marks serve

9

as *prima facie* evidence of the validity of the GOAT Marks and GOAT's right to the exclusive use of the GOAT Marks in commerce throughout the United States for the goods and services listed in the registrations. *Id.* ¶¶ 19, 22; *see also* 15 U.S.C. § 1057. Indeed, certain of these registrations, including U.S. Reg. No. 3506834, have become incontestable, serving as conclusive evidence of the registrations' validity and GOAT's entitlement to exclusive use of the marks in commerce in the United States on the goods and services listed in these registrations. Compl. ¶ 21; *see also* 15 U.S.C. § 1065. Above and beyond the presumption of validity, GOAT's trademarks have acquired extensive goodwill, developed a high degree of distinctiveness, and become well known, and recognized as identifying the high quality goods and services that originate from GOAT. Compl. ¶¶ 13-25.

### 2. Defendant Is Using Its Marks In Commerce Without Authorization.

Defendant is using the GOATLIFT Marks in commerce in connection with products that are identical or closely related to GOAT's products and services without GOAT's permission. *Id.* ¶¶ 26-31. Specifically, Defendant registered the *goatlift.com* domain name, created the Infringing Social Media Accounts, and is operating an online clothing store selling clothing branded with the GOATLIFT Marks. *Id.* ¶¶ 26-30. To GOAT's knowledge, customers have used Defendant's website and/or social media pages to purchase clothing and apparel branded with the infringing GOATLIFT Marks. *Id.* ¶ 29. Despite GOAT's multiple requests for Defendant to cease its use of the GOATLIFT Marks, GOAT's filing of an opposition in the TTAB, and GOAT's filing of this lawsuit, Defendant continues to use the GOATLIFT Marks without GOAT's permission. *See id.* ¶¶ 37-38. Thus, Defendant's unauthorized and continuous use of the GOATLIFT Marks has caused (and continues to cause) damage to GOAT. *Id.* ¶¶ 40-44.

US-DOCS\148393090.1

**3.** **Defendant's Use Of Its Marks Is In Connection With The Sale, Offering For Sale, Distribution, And Advertising Of Goods And Services.**

Defendant's use of its GOATLIFT Marks is undisputedly in connection with the sale, distribution, and advertising of clothing and accessories. Defendant operates the *www.goatlift.com* website where it offers clothing branded with the GOATLIFT Marks to consumers. *See* Compl. ¶¶ 27-29. Defendant also operates the Infringing Social Media Accounts where Defendant prominently displays the GOATLIFT Marks to promote its clothing and accessories. *Id.* ¶¶ 30-31.

**4.** **Defendant's Use Of Its Marks Is Likely To Cause Consumer Confusion.**

Defendant's use of the GOATLIFT Marks is likely to cause consumer confusion in the marketplace with the GOAT Marks given the similarity of the marks and the similarity of the goods and services. The GOATLIFT Marks incorporate the entire GOAT Mark, *see id.* ¶ 40, which is indicative of the similarity of the marks. *Cf. Tenn. Walking Horse Breeders' & Exhibitors' Ass'n v. Nat'l Walking Horse Ass'n*, No. 1:05-0088, 2007 U.S. Dist. LEXIS 8191, at *27-28 (M.D. Tenn. Jan. 31, 2007) (finding similarity between two marks where the infringing mark incorporated the plaintiff's word mark). Further, the GOATLIFT Marks are used by Defendant for goods and services that are identical and/or closely related to the goods and services offered under the GOAT Marks: apparel and accessories. Compl. ¶¶ 32-34, 40, 48, 61, 63; *see, e.g., Bliss Collection, LLC v. Latham Co., LLC*, 82 F.4th 499, 511 (6th Cir. 2023) (finding relatedness of goods where both parties sold children's clothing); *Ohio State Univ.*, 16 F. Supp. 3d at 913 (finding that the goods involved were similar as both parties were selling t-shirts). The similarity of the GOATLIFT Marks and the GOAT Marks, used on such closely related goods and services, is likely to cause consumer confusion. *See* Compl. ¶¶ 32, 48, 61, 63.

In addition, Defendant's trademark infringement is willful. "Under the Lanham Act, infringement is willful, and thus triggers the enhanced statutory damages limit, if the defendant 'had knowledge that its actions constitute an infringement.'" *Microsoft Corp.*, 490 F. Supp. 2d at 880 (quoting *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006)). Not only is willfulness inferred by a defendant's continued infringing behavior after receiving notice, "a court may infer willfulness from defendant's default," *Microsoft Corp.*, 490 F. Supp. 2d at 880 (citing *Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003)). As discussed above, Defendant has been on notice of its infringement *for years*, given GOAT's efforts to discuss the matter and filing an opposition in the TTAB, and yet Defendant *continues* to infringe GOAT's marks. *See* Compl. ¶¶ 37-39; Barry Decl. ¶ 9. As admitted by default, Defendant has intentionally, knowingly, maliciously, and willfully used its GOATLIFT Marks to violate GOAT's trademark rights and trade off GOAT's goodwill and reputation and has refused to cease this infringement. Compl. ¶¶ 33-34, 40, 42, 49, 60-61, 76, 86.

Therefore, the Court should find Defendant liable for (i) trademark infringement in violation of the Lanham Act, (ii) false designation of origin in violation of the Lanham Act, (iii) violating the Ohio Deceptive Trade Practices Act, and (iv) unfair competition and trademark infringement under Ohio common law. The Court should similarly find that Defendant's infringement was and continues to be willful.

### C. GOAT Is Entitled To Injunctive Relief.

Section 34 of the Lanham Act empowers courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."

15 U.S.C. § 1116(d). Permanent injunctive relief is appropriate when (1) the plaintiff risks suffering irreparable harm; (2) monetary remedies are inadequate to compensate for the plaintiff's injury; (3) the balance of hardships favors the plaintiff; and (4) the public interest would not be disserved by an injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Audi AG*, 469 F.3d at 542 (applying *eBay Inc.* in trademark case). The admitted allegations in GOAT's Complaint establish each of the four requirements for a permanent injunction here.

For the first factor, a trademark owner seeking injunctive relief is entitled to a rebuttable presumption of irreparable harm under the Trademark Modernization Act of 2020. *See* 15 U.S.C. § 1116(a) ("plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction."). Similarly, "Sixth Circuit caselaw holds that no particular finding of likelihood of entry (*sic*) or irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Microsoft*, 490 F. Supp. 2d at 882. Instead, "[i]n trademark infringement cases, a likelihood of confusion or possible risk to the requesting party's reputation satisfies the irreparable injury requirement." *Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553, 555 (6th Cir. 2013). Given that the admitted allegations of GOAT's Complaint established that Defendant's use of the GOATLIFT Marks is likely to cause consumer confusion, *see, e.g.*, Compl. ¶¶ 26-34, the first factor necessarily weighs in favor of a permanent injunction.

Turning to the second factor, Defendant's ongoing infringement (particularly its ongoing use of the GOATLIFT Marks across the Infringing Social Media Accounts) establishes that there is no adequate remedy at law. *See, e.g.*, *Audi AG*, 469 F.3d at 550 (explaining that ongoing

online infringement necessarily creates "potential for future harm, and therefore, there [is] no adequate remedy at law"). Defendant's infringement persists despite GOAT's outreach and filing of an opposition in the TTAB (as well as this suit). *See* Compl. ¶¶ 37-39; Barry Decl. ¶ 9. Thus, the second factor weighs in favor of a permanent injunction. *See Microsoft*, 490 F. Supp. 2d at 882-83 (concluding that "there is potential for future harm from infringement because Defendant has continued its infringing activities after notice from Microsoft and the filing of this lawsuit" and emphasizing that "because of Defendant's use of a website to carry out its infringing activities, the potential harm is widespread").

The third factor similarly weighs in favor of a permanent injunction. Specifically, "there is no harm to the Defendant inasmuch as an injunction will merely require Defendant to comply with the . . . Lanham Act." *Microsoft*, 490 F. Supp. 2d at 883. In contrast, GOAT is likely to lose sales when consumers are confused between the GOAT Marks and the GOATLIFT Marks for nearly identical goods. Compl. ¶¶ 32,40; *see also Microsoft*, 490 F. Supp. 2d at 833 (finding plaintiff's loss of sales to outweigh the hardship of compliance with the Copyright Act and Lanham Act).

Finally, there is a strong public interest in protecting the rights of a trademark owner rather than permitting an infringer to continue trading off the valuable goodwill of the owner's mark. *See, e.g.*, *Microsoft*, 490 F. Supp. 2d at 883 (concluding fourth factor weighs in favor of permanent injunction because injunction "would advance two fundamental purposes of trademark law: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark").

Accordingly, GOAT requests that the following permanent injunction be entered (as requested in the Complaint):

A.    An injunction ordering Defendant, and its officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with Defendant (collectively, the "Enjoined Parties"), who receive actual notice of the injunction order by personal or other service, to:

      i.    cease all use and never use the GOATLIFT Marks, the GOAT Marks, or any other mark likely to cause confusion with the GOAT Marks (including any misspellings, abbreviations, or variations of those marks) in, on, or with any products or services, or in connection with the advertising, marketing, or other promotion, distribution, offering for sale, or sale, of any products or services, including on any websites and the Infringing Social Media Accounts;

     ii.    never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, sold or otherwise distributed by the Enjoined Parties is in any manner associated or connected with GOAT, or are licensed, approved, or authorized in any way by GOAT;

    iii.    never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that the Enjoined Parties, or any of their products or services, are related to, or authorized or sponsored by, GOAT;

    iv.    never register any domain name that contains any of the GOAT Marks (including any misspellings, abbreviations, or variations of those Marks), or any domain name that is confusingly similar to any of the GOAT Marks;

15

v.    transfer to GOAT all domain names in the Enjoined Parties' possession, custody, or control that include the word "goat" (including any misspellings, abbreviations, or variations of this word), or that are otherwise confusingly similar to or contain any of the GOAT Marks, or were used in connection with the GOATLIFT Marks, including, but not limited to, the *goatlift.com* domain name;

vi.    transfer to GOAT, disable, or delete all social media accounts that were used to promote the GOATLIFT Marks, including all such accounts in Defendant's possession, custody, or control that include the word "goat" (including any misspellings, abbreviations, or variations of this word), or that are otherwise confusingly similar to or contain any of the GOAT Marks, or were used in connection with the GOATLIFT Marks, including, but not limited to, the Infringing Social Media Accounts;

vii.    never unfairly compete with GOAT in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of products and services bearing any of the GOAT Marks or any other mark likely to cause confusion with the GOAT Marks (including any misspellings, abbreviations, or variations of those Marks);

viii.    expressly withdraw Defendant's pending trademark applications for the GOATLIFT Marks; and

ix.     never apply for or seek to register the GOATLIFT Marks, any of the GOAT

Marks, or any other mark likely to cause confusion with the GOAT Marks

(including any misspellings, abbreviations, or variations of those Marks).

B.      To give practical effect to the Court's injunction, an order that the social

networking service or entity (e.g., Facebook) related to any of the social media accounts subject

to this Order must, within fourteen (14) days of receipt of the Order, transfer, disable, or

otherwise cancel those subject accounts at GOAT's request if the Enjoined Parties have not

already done so.

C.      To give practical effect to the Court's injunction, an order that the Registry or

Registrar for any of the domain names subject to this Order must, within fourteen (14) days of

receipt of the Order, transfer or otherwise assign those subject domain names to GOAT if the

Enjoined Parties have not already done so.

### D.      GOAT Is Entitled To Its Costs And Reasonable Attorneys' Fees

Finally, GOAT is entitled to its costs as the prevailing party.  15 U.S.C. § 1117(a);

Fed. R. Civ. P. 54(d)(1) ("[u]nless a federal statute, these rules, or a court order provides

otherwise, costs . . . should be allowed to the prevailing party").

GOAT is also entitled to recover its reasonable attorneys' fees, because: (1) the

Complaint, which has been admitted, alleged that this was an exceptional case due to

Defendant's intentional and willful misconduct; and (2) Defendant failed to appear and has

disregarded this litigation.  Compl. ¶¶ 40, 42, 55-56, 68-69, 76, 86; *see also* 15 U.S.C. § 1117(a)

("[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party").

Courts routinely award attorneys' fees in similar circumstances.  *See Microsoft*, 490 F. Supp. 2d

at 883 (granting requests for fees and costs in motion for default judgment because the

defendant's admitted acts of infringement were willful); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 854 (E.D. Mich. 2006) (same). GOAT requests an award against Defendant in the amount of $12,497.50, which includes attorneys' fees through the date of this Motion in the amount of $12,307.50 and costs through the date of this Motion in the amount of $190. *See* Barry Decl. ¶¶ 10-13.

## IV.    CONCLUSION

For these reasons, GOAT respectfully requests that the Court (i) enter default judgment against Defendant on all claims asserted in GOAT's Complaint; (ii) find that Defendant's infringement was willful; and (iii) grant GOAT's requests for permanent injunctive relief, attorneys' fees, and costs.


Dated:  February 27, 2024

/s/ *Kevin T. Shook*
Kevin T. Shook (0073718) (Trial Attorney)
Samantha M. Quimby (0081968)
FROST BROWN TODD LLP
One Columbus, Suite 2300
10 West Broad Street
Columbus, Ohio 43215
Direct: (614) 559-7214
Ph:  (614) 464-1211
Fax:  (614) 464-1737
kshook@fbtlaw.com

Jennifer L. Barry (*admitted pro hac vice*)
Adam A. Herrera (*admitted pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Ph:  (858) 523-5400
Fax:  (858) 523-5450
jennifer.barry@lw.com
adam.herrera@lw.com

US-DOCS\148393090.1

*Attorneys for Plaintiff*
1661, INC. d/b/a GOAT

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| 1661, INC. d/b/a GOAT, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> GOATLIFT, LLC, an Ohio limited liability company; and DOES 1-100, <br><br> Defendants. | Case No.: 2:24-cv-00078-MHW-KAJ <br><br> Judge: Michael H. Watson |

### DECLARATION OF JENNIFER L. BARRY IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, PERMANENT INJUNCTION, AND ATTORNEYS' FEES AGAINST DEFENDANT GOATLIFT, LLC

I, Jennifer L. Barry, declare the following:

1.  I am a partner at the law firm of Latham & Watkins LLP ("Latham"), counsel for Plaintiff 1661, Inc. d/b/a GOAT ("GOAT") in this action. I have been admitted *pro hac vice*. *See* ECF No. 10.

2.  The facts set forth below are within my personal knowledge, to which I could and would testify competently if called upon to do so.

3.  I submit this declaration in support of GOAT's Motion for Default Judgment against Defendant Goatlift, LLC ("Defendant").

4.  GOAT filed its Complaint against Defendant on January 9, 2024. *See* ECF No. 2.

5.  Defendant was served with the Complaint and all other necessary pleadings on January 10, 2024. *See* ECF No. 5.

6.  Defendant failed to file a responsive pleading by the January 31, 2024 response deadline. To date, Defendant has not answered or otherwise responded to the Complaint or appeared in this matter.

7.  On February 5, 2024, the Clerk of Court entered default against Defendant.  *See* ECF No. 7.

8.  To my knowledge, Defendant is not an infant, incompetent person(s), or a person(s) in military service or otherwise exempted from default judgment under the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) of 1940.

9.  Despite numerous communications from GOAT, including the filing of an opposition proceeding in the Trademark Trial and Appeal Board and the filing of this lawsuit, Defendant continues to use the GOATLIFT Marks.

10. I have reviewed the fees and costs for work performed related to this lawsuit (collectively, the "Fees and Costs").  I believe the Fees and Costs related to this case are reasonable and appropriate.

11. According to Latham's records, associate Adam Herrera has billed at least 3.5 hours to this case at an hourly rate of $1,041, totaling $3,643.50.  Dennis Mai, another Latham associate working on this case, has billed at least 8 hours to this case at an hourly rate of $1,083, totaling $8,664.  In total, GOAT has expended at least $12,307.50 on attorneys' fees.

12. According to Latham's records, GOAT has incurred at least $190 in costs, including costs associated with serving the Defendant.

13. The estimated total Fees and Costs thus being sought for this case through the date of this declaration is at least $12,497.50.

14. Legal fees continue to accrue in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed February 27, 2024 in San Diego, California.

_____

Jennifer L. Barry (*admitted pro hac vice*)