UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

1661, INC. d/b/a GOAT,

      Plaintiff,

      v.

GOATLIFT, LLC.,

      Defendant.

Case No. 2:24-cv-78

Judge Michael H. Watson

Magistrate Judge Shimeall

## OPINION AND ORDER

1661 Inc., d/b/a GOAT ("Plaintiff") renews its motion for default judgment against Goatlift, LLC ("Defendant"). ECF No. 23. For the following reasons, the motion is **DENIED**.

## I.      BACKGROUND

The Court takes the following allegations from Plaintiff's Complaint as true. Plaintiff utilizes the standard character "GOAT" mark:

# GOAT

("GOAT® mark") to operate its e-commerce platform, which facilitates the buying, selling, and authentication of previously-owned, high-end sneakers, clothing, jewelry, purses, and various other items. Compl. ¶ 13, ECF No. 2. Since the early 2000s, Plaintiff has also designed, marketed, and sold clothing and accessories branded with the GOAT® mark. *Id.* ¶ 16. Plaintiff's business success has led to several "co-branding business relationships" with high-end

fashion brands, including Burberry, Versace, Chloe, and McQ, as well as Bergdorf Goodman and Paris Saint-Germain. *Id.* ¶ ¶ 17–18.

Plaintiff has obtained federal registration for other trademarks and, as of September 30, 2008, for clothing bearing the GOAT® mark. *Id.* ¶ 19. Plaintiff asserts that the registration covering clothing is incontestable pursuant to 15 U.S.C. § 1065, giving Plaintiff the exclusive use of the GOAT® mark on clothing throughout the United States. *Id.* ¶ 21. Plaintiff further argues that because of its widespread and continuous use of its family of GOAT® marks, it has acquired "extensive goodwill . . . a high degree of distinctiveness . . . and ha[s] become well-known and recognized." *Id.* ¶ 25.

In August 2019, Defendant launched its athletic clothing and apparel company and registered the "www.goatlift.com" domain name to operate an online clothing store, which sells clothes bearing the "GOATLIFT" marks.

In November and December 2019, Defendant filed trademark applications with the United States Patent and Trademark Office ("USPTO") to register three "GOATLIFT" marks in connection with "athletic apparel, namely shirts, pants, jackets, footwear, hats and caps, [and] athletic uniforms" in trademark class 25. *Id.* ¶¶ 35–36. Of the three marks that Defendant applied to register, one is the standard character "GOATLIFT," one is an image of a goat with a red outline and white fill and surrounding above the word "GOATLIFT" in gray and red lettering in PORTO 400 font, and the third is an image of a muscular goat with its arms folded, in black, gray, and white, surrounded by a red circle and the words

"GOATLIFT-ATHLETE" in gray, red, and black lettering in Berlin Sans FB font:



("GOATLIFT marks").  *Id.* ¶¶ 26–27, ECF No. 23-1 at PAGEID #152; *see also* ECF No. 20-1 at PAGEID # 112.  Defendant's products bearing the GOATLIFT marks are also advertised on various social media platforms, including Facebook, Instagram, and Twitter, where the GOATLIFT marks are displayed, and consumers are directed to "www.goatlift.com"[1] to purchase clothing and apparel.  *Id.* ¶ 30.

On September 2, 2020, Plaintiff opposed registration of the GOATLIFT marks in the USPTO Trademark Trial and Appeal Board ("TTAB").  *Id.* ¶ 37.  Plaintiff asserts that it attempted to negotiate with Defendant, but Defendant refused and continued using the GOATLIFT marks during the pendency of the TTAB proceeding.  Mot., ECF No. 23 at PAGEID # 130.  Plaintiff then filed its Complaint with this Court on January 9, 2024, alleging, *inter alia*, trademark infringement.  Compl., ECF No. 2.

---

[1] As of July 16, 2026, this website appears to be defunct.

Case No. 2:24-cv-78                                                      Page 3 of 14

Defendant was served with the summons and Complaint on January 10, 2024, but failed to file a responsive pleading within twenty-one days.  ECF No. 5; ECF No. 23 at PAGEID # 130.  Plaintiff thereafter applied for an Entry of Default with the Clerk, ECF No. 6, and the Clerk entered default on the same day, ECF No. 7.  Plaintiff moved for default judgment, ECF No. 11, but the Court stayed the case pending the outcome of the TTAB proceeding.  ECF No. 13.

In Plaintiff's most recent status report, it provided the final order from TTAB indicating that the proceedings before it had concluded and that judgment was entered against Defendant as a discovery sanction.  ECF No. 20.  The sanction was a refusal of Defendant's trademark applications.  *Id*.  Given the conclusion of the TTAB proceeding, the Court lifted the stay on litigation, ECF No. 22, and Plaintiff now renews its motion for default judgment, ECF No. 23.

Plaintiff seeks an injunction, an order directing Defendant to submit a written report detailing its compliance with the injunction, an order directing the social networking services to transfer, disable, or cancel Defendant's social media accounts (if they have not already done so), and finally, an order directing the Registry or Registrar for any of the domain names to transfer or assign the domain names to Plaintiff if Defendant has not already done so.  ECF No. 23 at PAGEID # 144, 146.

## II.    STANDARD OF REVIEW

Applications for default judgment are governed by Federal Rule of Civil Procedure 55(b)(2).  "Following the clerk's entry of default pursuant to . . . R[ule]

55(a) and the party's application for default under Rule 55(b), the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Wood v. Bronzie*, No. 1:20-cv-231, 2020 WL 4015247, at *1 (S.D. Ohio July 16, 2020) (internal quotation marks and citation omitted). "To do so, the civil rules require that the party moving for a default judgment must present some evidence of its damages." *Id.* (internal quotation marks and citation omitted). However, the Court need not hold an evidentiary hearing "if the Court can determine the amount of damages by computation from the record before it." *Id.* (citation omitted).

Before granting default judgment, a court must satisfy itself of two things. First, the court must verify that it has both subject-matter jurisdiction over the action and personal jurisdiction over any defendant against whom it grants a default judgment. *See Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-cv-2007, 2022 WL 256337, at *1 (W.D. Tenn. Jan. 26, 2022). Second, the court must determine whether the facts in the complaint state a claim for relief against the defendant. *See Harrison v. Bailey*, 107 F.3d 870, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) (Table) ("Default judgments would not have been proper due to the failure to state a claim against these defendants."). Stated differently, to warrant default judgment, "the complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *6 (W.D. Mich. July 31, 2023) (citation omitted).

## III.    ANALYSIS

Upon consideration of the Complaint, the motion for default judgment, and all attachments to the same, the Court finds that Plaintiff is not entitled to default judgment, as a matter of law.

### A. The Court Has Jurisdiction Over This Matter

Plaintiff easily establishes subject-matter jurisdiction.  Plaintiff asserts claims under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), which is federal law. ECF No. 2 at PAGEID # 2.  The Court therefore has federal-question jurisdiction over those claims.  *See* 28 U.S.C. § 1331.

Plaintiff also asserts a violation of the Ohio Deceptive Trade Practices Act under Ohio Revised Code § 4165, *et seq.*, and a claim for unfair competition and trademark infringement under Ohio common law.  ECF No. 2 at PAGEID # 2. The Court has supplemental jurisdiction over those state-law claims as they "form part of the same case or controversy."  28 U.S.C. § 1367(a).

Next, the Complaint's now-admitted factual allegations demonstrate personal jurisdiction over Defendant.  *Harbold v. Smash Restro & Bar, LLC*, No. 5:22-cv-1583, 2023 WL 4085309, at *2 (N.D. Ohio June 20, 2023) ("Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments.").  Defendant is an Ohio limited liability company with its principal place of business in Groveport, Ohio.  Additionally, Defendant conducts business and provides goods and services using the GOATLIFT marks throughout the

United States, including in Ohio. ECF No. 2 at PAGEID # 3.  Thus, Defendant is "at home" in Ohio and subject to this Court's personal jurisdiction.  *IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d 760, 768 (N.D. Ohio 2019) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

**B.  Plaintiff fails to allege claims under the Lanham Act and Ohio law.**

**1.  Standard of Review**

**a.  Lanham Act Claims**

Plaintiff here brings a claim for trademark infringement under 15 U.S.C. § 1114 and a claim for unfair competition/false designation of origin under 15 U.S.C. § 1125(a).

"A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark 'is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'"  *AWGI, LLC v. Atlas Trucking Co., LLC*, 998 F.3d 258, 264 (6th Cir. 2021) (quoting *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013)); *see also* 15 U.S.C. § 1114(1).  Therefore, the test for trademark infringement ultimately examines "the likelihood of confusion between the two marks."  *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (citing *Two Pesos v. Taco Cabana*, 505 U.S. 763, 780 (1992)).

An unfair competition/false designation of origin claim under § 1125(a), similar to a trademark infringement claim under § 1114, "asks whether there is a

Case No. 2:24-cv-78                                                      Page 7 of 14

likelihood of confusion among consumers regarding the origin of the goods offered by the parties.  In fact, the same likelihood of confusion test applies." *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 910 (S.D. Ohio 2014) (citing *Audi*, 469 F.3d at 542 ("Under the Lanham Act, 15 U.S.C. § 1051 *et seq.,* we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks.")).

### b. Ohio-Law Claims

Plaintiff asserts a statutory claim for deceptive trade practices under Ohio law and common law claims for unfair competition and trademark infringement. Compl. ¶¶ 70–86, ECF No. 2.

Under Ohio Rev. Code § 4165, *et seq.*, courts "evaluate an Ohio deceptive trade practices claim under the same analysis as that used for Lanham Act claims." *The Hillman Grp., Inc. v. Minute Key Inc.*, 317 F. Supp. 3d 961, 968 (S.D. Ohio 2018) (quoting *Papa Ads, LLC v. Gatehouse Media, Inc.*, 485 F. App'x 53, 55 (6th Cir. 2012)).

Similarly, Ohio common law claims for trademark infringement and unfair competition "mirror . . . federal claim[s] of trademark infringement by also requiring proof of a likelihood of confusion." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275 (6th Cir. 1997) (citations omitted).

Thus, each of Plaintiff's claims requires a showing of likelihood of confusion between Plaintiff's GOAT® mark and Defendant's GOATLIFT marks.

## 2. Analysis

As an initial matter, TTAB's decision is not binding on the likelihood of confusion issue.

In *B&B Hardware, Inc. v. Hargis Indus., Inc.* the Supreme Court recognized TTAB's authority, finding that "opposition proceedings before the TTAB are in many ways similar to a civil action in a federal district court."  575 U. S. 138, 143 (2015) (internal quotations and citation omitted).  Thus, "[s]o long as the other ordinary elements of issue preclusion are met, when the usages adjudicated by the TTAB are materially the same as those before the district court, issue preclusion should apply."  *Id.* at 160.

Here, though, TTAB refused Defendant's applications for registration of the GOATLIFT marks as a discovery sanction.  ECF No. 20-1 at PAGEID # 120.  It made no finding concerning a likelihood of confusion.

Because the merits of Plaintiff's opposition to the GOATLIFT marks were not "litigated and decided," issue preclusion does not apply to the likelihood of confusion issue.  *Sharp Kabushiki Kaisha v. ThinkSharp, Inc.*, 448 F.3d 1368, 1370 (Fed. Cir. 2006).

Moreover, claim preclusion does not apply here.  The TTAB proceeding involved an affirmative application for registration, and this litigation involves Plaintiff's claims for infringement, so the claims at issue in each proceeding differ.  Moreover, "it is highly relevant that the default judgment" entered in Plaintiff's favor in the TTAB proceeding "was entered without consideration of the merits."

*Id.* at 1372. "The purpose of *res judicata* is salutary, for it protects a party from being required to relitigate the same issue against the same party in a separate action." *Id.* Plaintiff needs no protection here, for it never fully litigated anything bearing on infringement in the TTAB proceeding.

Because the TTAB decision is not binding, the Court must take as true the *factual* allegations and determine, as a legal matter, whether those facts establish a likelihood of confusion between the GOAT® mark and the GOATLIFT marks. *Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 424 (6th Cir. 2017) ("In contrast, the further determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion." (internal quotation marks and citation omitted)).

The Sixth Circuit has set forth an eight-factor test to determine likelihood of confusion, (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the marks; and (8) likelihood of expansion of the product lines. *Id.* (citations omitted).

Here, the strength of the Plaintiff's mark and marketing channels used (factors (1) and (5)) weigh in favor of Plaintiff. Plaintiff's mark is incontestable, and Plaintiff alleges that it and Defendant used similar marketing channels (i.e., websites) to market their respective goods.

On the other hand, the Court finds the relatedness of the goods factor

(factor (2)) to be neutral here.  Both Plaintiff and Defendant allegedly use their respective marks on clothing, but Plaintiff alleges that it sells high-end fashion clothing whereas Defendant sells athletic clothing.  The goods are therefore in the same general category but are distinct enough to render this factor neutral.

Moreover, Plaintiff fails to allege any instance of actual confusion, so factor (4) weighs against Plaintiff.

Likely degree of purchaser care (factor (6)) also weighs against Plaintiff. Plaintiff's Complaint fails to persuade that a purchaser seeking high-end fashion—potentially involving name brands such as Burberry, Versace, Chloe, and McQ—would believe that an athletic t-shirt bearing the word "GOATLIFT" was Plaintiff's product.  Indeed, Plaintiff's purchasers would likely exercise enough care to realize that a product sold by Defendant through social media or on www.goatlift.com is not an authentic luxury clothing item being re-sold by Plaintiff; a Plaintiff-branded clothing item; or in any way affiliated with Plaintiff.

Likewise, Defendant's intent on selecting the mark (factor (7)) weighs against Plaintiff, as Plaintiff fails to allege any facts making plausible an inference that Defendant chose the GOATLIFT marks to capitalize on Plaintiff's goodwill, confuse Plaintiff's consumers, or otherwise piggy-back off of Plaintiff's success. Plaintiff's allegation that Defendant chose its marks to capitalize on Plaintiff's success is purportedly based "on information and belief," but Plaintiff fails to allege any of that "information" which led to its "belief."  Compl. ¶ 33, ECF No. 2; *see also id.* ¶ 41.  Accordingly, the well-pleaded allegations do not support the

conclusion.[2]

Most importantly, as to factor (3), the Court concludes that the marks are not similar.  Other than the fact that Defendant's marks contain the word "goat," little else resembles Plaintiff's mark.  "Although the respective marks use the same words, the focus of our inquiry is much broader inasmuch as we are obligated to evaluate the marks as they appear in commerce—not just as they appear in black and white." *Progressive Distribution Servs., Inc.*, 856 F.3d at 433.  In commerce, Plaintiff uses its mark as a purely black or purely white word.  Defendant, on the other hand, uses its marks with gray and colored lettering and often with images that are red, white, black, and gray.  Moreover, even as to the standard character marks, Defendant's mark contains an entirely additional word—"lift."

As for Defendant's word and image marks, the images clearly make them dissimilar to Plaintiff's standard character mark.  For starters, the image of the animal goat distinguishes those marks from the acronym for "Greatest of All Time."  Further, the red, gray, black, and white color schemes, along with the images of a goat or a goat with folded muscular arms are simply unlikely to be confused with Plaintiff's plain-word mark, which is unaccompanied by any image.  This is especially true for the muscular-armed goat mark, which also bears the

---

[2] In the alternative, even if this factor is analyzed in Plaintiff's favor, the Court's independent conclusion as to the similarity of the marks, along with the other factors that weigh against Plaintiff, warrant finding no likelihood of confusion.

word "athlete."

Moreover, in *Progressive Distribution*, the Sixth Circuit found that likelihood of confusion is even further reduced where one mark, in that case, the UPS logo, "is so easily recognizable and associated with a strong and popular brand," when compared to the other. *Id.* at 433. It is the same here. Plaintiff, by its own admission, is a successful e-commerce platform that has been operating since the early 2000s and has "developed a high degree of distinctiveness," in addition to becoming "well-known and recognized as identifying goods and services that originate from GOAT." ECF No. 23 at PAGEID # 129. Defendant, on the other hand, is a small LLC with a minor following on social media.[3]

On similarity factor, alone, Plaintiff's argument for a likelihood of confusion fails.

Finally, Plaintiff fails to allege that it intends to produce and market its own branded athletic wear or that Defendant intends to expand into high-end luxury clothing. Accordingly, factor (8) weighs against Plaintiff.

At bottom, Plaintiff's mark does not cover every possible combination of words that somehow include the word "goat." As the allegations in Plaintiff's Complaint do not establish a likelihood of confusion, Plaintiff is not entitled to default judgment on any of its claims.

---

[3] *See generally* https://www.instagram.com/goatlift/ and https://www.facebook.com/Goatlift/.

## IV.    CONCLUSION

For the above reasons, Plaintiff's motion for default judgment, ECF No. 23, is **DENIED WITHOUT PREJUDICE**.  As further proceedings are unlikely to result in judgment in Plaintiff's favor, the most efficient course of action is likely to enter final judgment for Defendant and dismiss this case.  Plaintiff may **SHOW CAUSE** within **SEVEN DAYS** why the Court should not enter final judgment.

The Clerk shall terminate ECF No. 23 as a pending motion.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**